UNITED STATES BANKRUPTCY COURT
FOR THE
EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: | ) |
| | ) |
| BRENDA KAY BROWN | ) Case No. 12-70013 (3) 7 |
| | ) |
| Debtor(s) | ) |
| _____ | ) |

## MEMORANDUM

This matter came before the Court on the Joint Motion of the Trustee, James Westenhoefer, Richard Wehrle, Conservator for James A. Brown, and Paul Brown, Guardian for James A. Brown, to Show Cause why the Debtor should not be held in Contempt for Failing to Comply with Court Orders (Docket No. 386). The Court conducted an evidentiary hearing on September 23, 2013, and a second hearing for sanctions on October 1, 2013. Both the Chapter 7 Trustee, James Westenhoefer (the "Trustee"), and counsel for Richard Wehrle, Conservator for James A. Brown, and Paul Brown, guardian for James A. Brown, and the remaining Brown Parties (hereinafter collectively referred to as "Movants") appeared for the hearings. The Debtor, *pro se*, also appeared for the hearings.

### JURISDICTION

This Court has subject-matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

On January 13, 2012, (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Eastern District of Kentucky a voluntary petition for relief under Chapter

11 of Title 11 of the United States Code. The Debtor agreed to convert her Chapter 11 case to a Chapter 7 proceeding on or about March 22, 2012 (Doc. No. 132). On March 23, 2012, the James Westenhoefer was appointed as Chapter 7 Trustee in this case.

On December 12, 2012, the Movants filed a Motion Directing Kay Brown to Turnover Property of the Estate and to Provide an Accounting (Doc. No. 343) (the "Turnover Motion"). The Turnover Motion sought a Court order directing the Debtor to return property that she had taken from a house that she owned in Paintsville, Kentucky (the "Paintsville House"). The Turnover Motion identified numerous pieces of personal property that the Trustee alleged that the Debtor had taken from the Paintsville residence. The Turnover Motion also sought a return of jewelry taken by the Debtor, including a 3 carat diamond engagement ring (the "Engagement Ring"), a 5 carat diamond ring, and other jewelry purchased by the Debtor in late March /early April 2011. Finally, the Turnover Motion requested an order directing the Debtor to provide a detailed accounting of all property with a purchase price of over $500.00 which the Debtor and/or her husband purchased or acquired since January 1, 2008 through January 13, 2012 and disclose its disposition, on or before January 28, 2013.

On December 13, 2012, the Court entered an order (Doc. No. 345) (the "Turnover Order") granting the relief requested in the Turnover Motion.

When the Debtor failed to comply with the Turnover Order, on July 3, 2013, the Movants filed a Joint Motion to Show Cause Why Debtor Brenda K. Brown Should Not Be Held in Contempt and Sanctioned for Failing to Comply with Court Orders (Doc. No. 386) (the "Show Cause Motion"). In the Show Cause Motion, the Movants alleged the Debtor had not complied with the Turnover Order by failing to turnover property to the Trustee or provide the required accounting. The Movants requested entry of an order holding the Debtor in contempt for failing to comply with

the Turnover Order, assessing appropriate monetary damages for the value of the property not turned over to the Trustee, and incarcerating the Debtor until she complied with the Turnover Order.

The Court held an initial hearing on the Show Cause Motion on July 25, 2013. Both the Movants and the *pro se* Debtor appeared at that hearing. At that hearing, the Trustee informed the Court that he was seeking money damages for the fair market value of all the items that were not turned over by the Debtor. Before setting the Show Cause Motion for an evidentiary hearing, the Court reminded the Debtor that as a debtor in bankruptcy, she had an obligation to cooperate with the Trustee. The Court also reminded the Debtor that she was still under the mandates of the Turnover Order requiring turnover and an accounting. The Court also cautioned the Debtor that the Show Cause Motion was a very serious matter and urged her to retain the services of an attorney. The Court scheduled an evidentiary hearing on the Show Cause Motion for August 26, 2013, which was later continued to September 23, 2013.

At the September 23 evidentiary hearing, the Trustee introduced into evidence an order entered by the Bankruptcy Court on September 14, 2012 (Doc. No. 303), wherein the Bankruptcy Court, with a very limited exception, sustained the Movants objection to all of Debtor's claimed exemptions in real or personal property (the "Exemption Order"). The Movants also introduced into the record the Turnover Order.

The Court also takes notice of the docket in this case and notes that on December 14, 2013, counsel for the Movants filed a Certificate of Service (Doc. No. 346) indicating that the Turnover Order was served electronically on all parties receiving CM/ECF notifications in this case and by U.S. Mail to the Debtor, care of her attorney at that time Mr. David G. Perdue. The Debtor testified that she may have received the Turnover Order, but that she did not remember seeing it. On this point, the Court finds the Debtor's testimony completely non-credible and specifically finds that the

Debtor did received notice of the turnover order. Moreover, even assuming the Debtor did not receive the Turnover Order back in December 2012, there can be no question she was aware of the Turnover Order as of the July hearing on the Show Cause Motion.

Through the Debtor's testimony, the Movants were able to establish that the Debtor did not completely comply with the Turnover Order. Specifically, upon direct examination by the Trustee, the Debtor admitted that she did not turnover numerous items of personal property, including the Engagement Ring. According to the appraisal of the ring, the ring was valued at $65,000.00 and was insured at a value of $66,730. With respect to the 5 carat ring, valued at $75,000.00, and other pieces of property, the Debtor testified that she did not have that property and did not know its location. The Movants also presented evidence that the Debtor failed to turnover the other jewelry valued at $35,351.10, that the Debtor purchased on a cruise in late March/ early April 2011.

At the conclusion of the evidentiary hearing, the Court found that the Movants had presented clear and convincing evidence for the Court to find the Debtor in contempt of Court for her failure to comply with the Turnover Order. The Court then continued the hearing to October 1, 2013, to determine what, if any, sanctions or penalties the Court should impose due to the Debtor's contempt. The Court also directed the Movants to file a pleading specifically indicating what remedies they were seeking from the Court due to the Debtor's contempt.

At the October 1 hearing, the Movants presented evidence that the value of the property not turned over pursuant to the Turnover Order possessed a value of $25,500.00. This figure was derived at by calculating the selling price of the Paintsville House, with furnishings, minus the actual purchase price of the Paintsville House, minus the furnishing. The Debtor was then given credit for the items that she either did not take, or that she returned. The remaining portion constitutes the value of the property not returned. The Movants also presented evidence that they had incurred

$12,000.00 in attorney's fees in prosecuting the Show Cause Motion. Counsel proffered that he had spent at least thirty (30) hours working on the matter and that his hourly rate was $400.00 an hour.

## CONCLUSIONS OF LAW

Civil contempt powers are expressly granted to the bankruptcy court by 11 U.S.C. § 105 which authorizes the Court to take any action "necessary or appropriate to enforce or implement court orders ..." In re Duggan, 133 B.R. 671 (Bankr. D. Mass. 1991) citing In re Skinner, 917 F.2d 444 (10th Cir.1990); In re Walters, 868 F.2d 665 (4th Cir.1989). Federal Rule of Bankruptcy Procedure 9020 states, "Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest."

Civil contempt is designed to be remedial; to compel or coerce obedience to a court order or to compensate a party for another's noncompliance with a court order. In re Joint Eastern and Southern Districts Asbestos Litigation, 830 F. Supp. 1153, 1155 (C.D. Ill. 1993). A fundamental precept to our judicial system is that "all orders and judgements of courts must be complied with promptly." Gnesys, Inc. v. Greene, 437 F.3d 482, 493 (6th Cir.2005) (citation and quotation marks omitted). A finding of civil contempt may be purged through obedience. Civil contempt may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (footnote omitted).

The party seeking a contempt order "must establish three elements by clear and convincing evidence: (1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite." Hunter v. Magack (In re Magack), 247 B.R. 406, 410 (Bankr. N.D. Ohio 1999) (citing Glover v. Johnson, 138 F.3d 229, 244 (6th Cir.1998). "[W]illfulness is not an element

of civil contempt and intent to disobey the order is irrelevant." In re Walker, 257 B.R. 493, 497 (Bankr. N.D. Ohio 2001) (citing Rolex Watch, U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir.1996)).

Generally speaking, there are two different methods to coerce a contemnor into compliance. The first is a monetary fine that either compensates the complainant for demonstrated damages resulting from the contempt or a fine payable into the court that can be avoided by "performing the act required by the court's order[.]" United States v. Bayshore Assoc., Inc., 934 F.2d 1391, 1400 (6th Cir.1991) (citations and quotation marks omitted). The other method to coerce compliance is incarceration. "Incarceration has long been established as an appropriate sanction for civil contempt." Id. (collecting United States Supreme Court cases dating back to 1911).

"Once the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." Electrical Workers Pension Trust Fund of Local Union 58, IBEW v. Gary's Elec. Service Co., 340 F.3d 373, 379 (6th Cir.2003) (citing United States v. Rylander, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983)). To meet this burden a contemnor is required "to show categorically and in detail why he or she is unable to comply with the court's order[,]" demonstrate that they "took all reasonable steps within [their] power to comply with the court's order[,]" and "show that he is not responsible for the present inability to pay." Id.

In this case, the Debtor was provided the requisite notice and opportunity to be heard on these issues. The Movants met their burden of proof for the Court to find the Debtor in contempt. As stated above, the Court found that the Debtor had knowledge of the Turnover Order. With respect to the second element, the Debtor admitted that she failed to completely comply with the Turnover Order. She admitted to retaining the Engagement Ring, and several other pieces of

personal property. Finally, with respect to the third element, the Turnover Order was specific and definite. While the Court is unsure why the Movants requested turnover of <u>all</u> the Debtor's property, including property with no fair market value, in light of the Exemption Order, they were entitled to the relief requested.

Having established their prima facie case, the burden shifted to the Debtor to present evidence why she was unable to comply with the order. The Debtor categorically failed to meet her burden of proof. In fact, the Debtor admitted retaining some of the property that was ordered to be turned over, including the Engagement Ring. With respect to other property, including the 5 carat ring, the Debtor testified that she did not have this property and that she did not know of its location. She insinuated that the property may have been stolen, but could offer no proof to support this insinuation. The Court found the Debtor's testimony on this point simply not credible. Evidence was presented that the Debtor was in possession of the 5 carat ring at a point of time after the Debtor stated it had gone missing. The Court believes the Debtor is still in possession of this property, including the 5 carat ring, but has simply refused to comply with the order requiring its turnover.

This takes the Court to the remedy portion of these proceedings. As stated above, there are usually two forms of remedies available to a court for a party's failure to comply with a court order. Appropriate fines for civil contempt generally include the parties' actual damages incurred and reasonable attorney's fees. <u>Braun v. Champion Credit Union (In re Braun)</u>, 152 B.R. 466, 474 (N.D. Ohio 1993). The party seeking contempt "must put on credible evidence showing the amount of the loss sustained." <u>Distad v. United States (In re Distad)</u>, 392 B.R. 482, 487 (Bankr. D. Utah 2008). "Upon a finding of civil contempt, fines payable to the aggrieved party must be based upon actual damages incurred by the party as a result of the contempt and/or noncompliance." <u>In re Borowski</u>,

2013 WL 3759794 (Bankr. E.D. Tenn. 2013) (citing Thomasville Furniture Indus., Inc. v. The Elder–Beerman Stores, Corp., 250 B.R. 609, 620 (S.D. Ohio 1998).

In addition to monetary damages for civil contempt, incarceration is also available to the Court. Incarceration can be either a civil contempt sanction or a criminal contempt sanction, depending upon the nature of the incarceration. Incarceration is not limited to just criminal contempt. See, e.g., Hicks v. Feiock, 485 U.S. 624, 632, [108 S.Ct. 1423, 99 L.Ed.2d 721] (1988).

At the October 1, 2013 remedies hearing, the Trustee presented evidence that the fair market value of the items not turned over is $200,8512.00. The Trustee also presented testimony that the amount of attorney fees incurred by the Movants is $12,000.00. The Court found both the amount of time spent on the matter reasonable and necessary, and further found the hourly rate charged by the Movant's attorney, Mr. C.R. Bowles, Jr., to be reasonable for an attorney of his experience and expertise in the Eastern District of Kentucky. As stated in Court at the October 1 hearing, the Debtor was again ordered to turnover the Engagement Ring, which she possessed on her person. The Court also directed that if the Debtor refused to turnover the Engagement Ring, she would be immediately incarcerated until she complied.

## CONCLUSION

In light of the Debtor's continued failure to completely comply with the Turnover Order, the Movants are awarded a monetary judgment in the amount of $147,851.00 This figure is comprised of the following: (1) $75,000.00 for the 5 carat ring; (2) $35,351.00 for the jewelry purchased on the cruise; (3) $25,500.00 for the value of the furniture and furnishings from the Paintsville House taken and not returned; and (4) $12,000.00 representing the Movants' attorney's fees and costs.

Because the Debtor turned over the Engagement Ring at the conclusion of the hearing, the value of this ring was not included in the monetary judgment. A separate order will be entered in accordance with this Memorandum.

_____
Alan C. Stout
United States Bankruptcy Judge

Dated: October 2, 2013